*1196 OPINION.
Black:
Petitioner contends it is entitled to deduct from its gross income for the fiscal years ending September 30, 1928 and 1929, unamortized bond discount and expense in the amounts of $277,859.06 and $91,532.97, respectively, which amounts are allocable to the $2,848,000 and $978,000 par value of bonds converted into petitioner’s common capital stock during those respective years. This alleged right is denied by respondent.
On at least three occasions we have had this identical question before us and have held contrary to petitioner’s contention each time. See Chicago, Rock Island & Pacific Railway Co., 13 B. T. A. 988. 1035; aff'd., 47 Fed. (2d) 990; certiorari denied, 284 U. S. 618; 375 Park Avenue Corporation, 23 B. T. A. 969; Pierce Oil Corporation, 32 B. T. A. 403, 421. These holdings are also in accord with the respondent’s consistent treatment of the question over a long period of years. See I. T. 2347, C. B. VI-1, p. 86; G. C. M. 9674, C. B. X-2, p. 354; T. D. 4603, C. B. XIV-2, p. 58, 59.
The ground upon which these decided cases stand is that the conversion of bonds into capital stock of the obligor is purely a capital transaction; that is, a readjustment of the-obligor’s capital structure, which does not result in either a deductible loss or a taxable gain. The obligor does not pay out anything. It merely readjusts its capital. As we said in 375 Park Avenue Corporation, supra, “Instead of suffering the outlay of money in excess of the amount borrowed, it created a new distribution of its shares, thus avoiding its fixed financial obligation and devoting the borrowed money to the ordinary rfsks of its business.”
*1197 In its briefs petitioner contended that the cases of Chicago, Rock Island & Pacific Railway Co., supra, and 375 Parle Avenue Corporation, supra, were decided on premises and assumptions which are no longer tenable. In support of this contention petitioner has cited and discussed several cases wherein a corporation taxpayer has dealt in its own stock in one way or another and has been held to have had gain or loss by reason of the transaction. Not any of these cited cases involves the situation that is present here, and, in view of the decisions referred to above, it is believed that no useful purpose would be gained in discussing these several cases in this opinion.
We hold, therefore, that the respondent was correct in disallowing the two items of $277,859.06 and $91,532.97.
The second assignment of error is that respondent erred in not allowing as a deduction from petitioner’s gross income for 1929 “expenses of $33,310 incurred by petitioner in said year in redeeming $978,000 par value of its First Mortgage 6% Convertible Gold Bonds.”
In the stipulation of facts filed by the parties it was agreed that during the fiscal year 1929 petitioner paid Potter & Co., bankers, $33,310 “as a commission for underwriting 16,665 shares of its stock pursuant to the agreement” between petitioner and the bankers, which agreement is quoted in our findings of fact.
It is well settled that commissions paid for underwriting shares of a corporation’s capital stock are not allowable as deductions from gross income. See Alamo Coal Co., 31 B. T. A. 869, 875, and cases there cited; footnote 3 in Helvering v. Union Pacific Railroad Co., 293 U. S. 282; Surety Finance Co. v. Commissioner, 77 Fed. (2d) 221; and Baltimore & Ohio Railroad Co. v. Commissioner, 78 Fed. (2d) 460. While it is true that this underwriting fee was incurred in connection with the retirement of $978,000 of petitioner’s bonds by conversion into 16,665 shares of petitioner’s common stock, nevertheless it seems to us that the $33,310 remains an underwriting fee, incurred and paid in connection with the issuance of shares of petitioner’s common stock. We do not see where there is any warrant to treat the expenditure differently from the ordinary underwriting fee incurred and paid by a corporation in the sale or other disposition of its shares of caiptal stock. Petitioner’s contentions on this issue are denied.
Both parties have departed from their original positions on the bonus issue and are now in agreement as to the fiscal year 1930 that $163,700 is the amount deductible as additional compensation for that year. This is the amount that was stipulated as having been actually fixed and expended during that year.
The parties also stipulated that the amounts actually fixed and expended for the fiscal years 1928 and 1929 were $103,266.64 and *1198 $161,540.89, respectively. For the year 1928 the respondent has affirmatively alleged that petitioner’s income for that year should be increased by $79,768.12 representing the difference between $183,-034.76 and $103,266.64. For the year 1929 the respondent in his brief concedes that petitioner’s income for that year should be decreased by $45,000 representing the difference between $161,540.89 and $116,540.89. Petitioner contends that, because the amounts actually fixed and expended for the fiscal years 1928 and 1929 were paid’ partly in stock and partly in cash, the amount that is deductible for each year is measured by the fair market value of the stock at the time of payment, plus the amount of cash paid rather than the amount of the liability that was extinguished by the payment of the stock and cash. In other words, it is petitioner’s contention that, since the 2,000 shares of stock paid during the fiscal year 1928 had a fair market value of $106,250 on the date of payment, the amount allowable for that year is $106,250 plus the $2,000 in cash that was also paid during that year; and that, since the 2,000 shares of stock paid during the fiscal year 1929 had a fair market value of $214,000 on the date of payment, the amount allowable for the fiscal year 1929 is $214,000 plus the $14,500 in cash that was also paid during that year.
Petitioner relies principally upon our decision in Package Machinery Co., 28 B. T. A. 980. In that case we stated the situation and our conclusion as follows:
The respondent’s position, we think, is premised upon an. erroneous interpretation of the resolution authorizing the additional compensation. The resolution provided that 25 per cent of the profits, after certain specified deductions had been made, should be set aside to pay the officers, in certain proportions, additional compensation, payment to be made in petitioner’s common stock at par. Its effect was to create a liability on the pari of the petitioner to its officers, not for a specific sum in terms of dollars and cents, but for a number of shares of stock of an aggregate par value equal to the profits in whñch the officers were entitled to participate. In other words the amount set aside was not the petitioner’s absolute liability, but merely the measure of the number of shares to be issued. Thus the petitioner’s liability for additional compensation to officers for the taxable year involved was 931 shares of its common stock, plus fractional shares for which cash was paid. This liability must, of course, for the purposes of the tax, be translated into dollars and cents; and we have consistently held that the translation must be based upon the fair market value of the stock as of the date of issue. [Emphasis supplied.]
Respondent contends that the doctrine of this case is inapplicable here, and further suggests that, since it is now settled that a corporation may realize gain or loss upon dealings in its own stock, depending upon the real nature of the transaction involved, Allyne-Zerk Co., 29 B. T. A. 1194; affd., 83 Fed. (2d) 525, it would make no difference in the final result whether petitioner be allowed deductions for additional compensation paid its employees on the basis of the cost of *1199 the 4,000 shares in question, or on the basis of the fair market value of such shares on the dates of payment, for the reason that if petitioner were allowed to deduct the compensation on the latter basis, it would at the same time realize taxable income measured by the difference between the cost to it of the 4,000 shares and the fair market value of such shares on the date they were disposed of in payment of a liability equal to their fair market value, and that the taxable income thus resulting ivould exactly equal the increased deduction now claimed by petitioner. We think the issue we have here to decide may be decided without consideration of this argument and solely by reference to the facts that were stipulated.
It is true that for the fiscal years 1928 and 1929 the bonuses were paid partly in stock and partly in cash. But it is by no means clear, as petitioner contends, that petitioner’s directors were to pay the bonuses in stock, as the resolution provided in the Package Machinery Co. case. On the contrary, it wras stipulated by the parties that during each of the fiscal years in question “the directors by informal action fixed the amount to be distributed” and that the amounts “so fixed and actually expended for this purpose” were $103,266.64 for the fiscal year 1928 and $161,540.89 for the fiscal year 1929.’
Upon such a stipulation we can not find that the measure of petitioner’s bonus liability was shares rather than an amount fixed in dollars and cents. All that petitioner was obligated to pay as additional compensation for the years 1928 and 1929 were the amounts fixed by its board of directors of $103,266.64 and $161,540.89, respectively, and set up on its books as a liability, and that was all it actually expended for that purpose. We know of no authority in law for allowing petitioner a greater deduction for business expenses than that for which it was legally obligated to pay, namely, $264,-807.53, for the two years in question. Furthermore, as a matter of fact, petitioner was out of pocket only the amount of $264,807.53. It used $248,307.53 of the amount fixed as additional compensation to purchase 4,000 shares of its own stock which it distributed to its employees, together with the balance of $16,500 in cash. In this respect we think the instant case is distinguishable from Package Machinery Co., supra, and cases there cited, and requires a different treatment of the allowable deductions. In the Package Machinery Co. case there was no absolute monetary liability from the corporation to the officers and employees to distribute any definite amount of monetary bonus. The obligation to distribute was in certain shares of stock, which in that case figured 931 shares. So we understand the cases cited and relied upon in the Package Machinery Co. case to mean. In the instant case the amounts in the years which we have *1200 before us were definitely fixed in dollars and cents by petitioner’s board of directors and in one of the years, 1930, the amount fixed in dollars and cents was actually paid in cash, and in the other two years, to wit, 1928 and 1929, most of the amount fixed was expended by the corporation in the purchase of stock to be distributed to the employees. Wo fail to see where this latter method gives petitioner the right to a deduction greater than the amount which it had incurred on its books .for the payment of bonuses and which it actually expended for that purpose.
It is our opinion, and we so hold, that petitioner is entitled to deduct from its gross income for the fiscal years 1928 and 1929, as additional compensation incurred and paid to its officers and employees, the amounts of $103,266.64 and $161,540.89, respectively. As we have already stated, the parties are in agreement that the allowable deduction in this respect for the fiscal year 1930 is $163,700.
Reviewed by the Board.

Decisions will be entered under Bule 50.