## UNION PACIFIC RAILROAD COMPANY
### v.
### The UNITED STATES.
### No. 310–62.

United States Court of Claims.
Oct. 18, 1968.

Robert J. Casey, New York City, attorney of record, for plaintiff. Thomás E. Tyre, John A. Craig, Thomas J. McCoy, Jr. and Clark, Carr & Ellis, New York City, of counsel.

Theodore D. Peyser, Jr., Washington, D. C., with whom was Asst. Atty. Gen., Mitchell Rogovin, for defendant. Philip R. Miller and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

SKELTON, Judge.

The plaintiff, Union Pacific Railroad Company, was and has been at all times pertinent hereto, a corporation organized and existing under the laws of the State of Utah, with its office and principal place of business in New York. It brought this action to recover, among other items, $4,187,159.68 in income and excess profits tax and assessed interest thereon paid for the calendar year 1942, together with statutory interest thereon, and $9,222,801.78 in statutory interest on refunds or credits of tax previously made for 1942.

Both plaintiff and defendant (The United States of America) have moved for partial summary judgment with reference to the claims set forth in Counts XXIX and XXX of plaintiff's first amended petition. The consideration and disposition of these motions is all that

is before the court for decision at this time.

In our opinion decided January 19, 1968, we held that this court had jurisdiction over the issues embraced in these two counts solely as offsets to the defendant's offsets.[1] These issues involve the problem of what should be included in plaintiff's equity invested capital for purposes of determining its excess profits tax credit under the provisions of the World War II Excess Profits Tax Act. It naturally follows that the greater plaintiff's equity invested capital, the more credit it will receive and the less taxes it will have to pay. Under these circumstances, it is to plaintiff's advantage to show as large an amount of equity invested capital as possible. It seeks to do this by the following facts set forth in Counts XXIX and XXX of its amended petition.

In Count XXIX, it is shown that in 1901, plaintiff issued $100 million in ten-year four percent bonds convertible at the option of the holder into $100 par value common stock. The bonds could be converted into or exchanged for stock on the basis of one share of the $100 par value common stock for each $100 principal amount of the bonds. The plaintiff received $100 million in cash for these bonds. From 1901 through 1907, holders of the bonds converted $99,450,-000 principal amount of the bonds into 994,500 shares of plaintiff's common stock which plaintiff issued to them on the basis specified in the bonds when they were originally issued (i. e., $100 par value share of stock for each $100 amount of bonds). The plaintiff computed its/excess profits tax credit based on equity invested capital for the year 1942 and its unused excess profits carryovers from 1940 and 1941 by including in money and property paid in for the issuance of the 994,500 shares of stock, the sum of $99,450,000. This was approved by the Commissioner of Internal Revenue.

However, in its first amended petition, filed herein December 14, 1966, plaintiff claims for the first time that the Commissioner, in computing plaintiff's excess profits tax credit based on equity invested capital, should have included in money and property paid in for stock an additional $28,662,393.68, which is alleged to be the excess of the fair market value of said stock over its par value at the time the bonds were converted into stock.

In Count XXX, plaintiff alleges that in 1907 it issued $73,762,000 in twenty-year four percent bonds convertible at the option of the holder into $100 par value common stock at the rate of one share of stock for $175 face value in bonds. The plaintiff received $73,762,000 in cash for these bonds. During the years 1908 through 1914, the holders of $46,926,775 principal amount of the bonds converted them into 268,153 shares of common stock which were issued to them by the plaintiff for the bonds. (The sum of $46,-926,775, divided by the conversion rate of $175, equals the 268,153 shares of stock so issued.) The plaintiff computed its excess profits credit based on equity invested capital for the year 1942 and its unused excess profits carryovers from 1940 and 1941 by including in equity invested capital $175 for each of the 268,-153 shares of stock in the total sum of $46,926,775. This was approved by the Commissioner of Internal Revenue.

When plaintiff filed its first amended original petition on December 14, 1966, it claimed for the first time in Count XXX that the Commissioner should have increased plaintiff's money and property paid in for stock, in computing its excess profits tax credit based on equity invested capital for the year 1942, and in computing its unused profits tax credit carryovers from 1940 and 1941 by the excess of the fair market value of the stock so issued over its par value in the total sum of $19,403,421.

1. Union Pacific Railroad Co. v. United States, 389 F.2d 437, 182 Ct.Cl. 103 (1968). See that decision for an over-all statement of plaintiff's entire case, which will not be repeated here.

In short, the problem before us in the motions is to determine the amount of money or property that was paid in on account of the issuance of the 1,262,653 shares of common stock from 1901 through 1914 by the conversion of the two types of taxpayer's convertible bonds. We might point out that the differences in the two types of bonds are immaterial, because the same principles are involved as to both. We shall, accordingly, treat them for all practical purposes, as if they were one type or one issue.

The plaintiff contends that it is entitled to include in its equity invested capital for the purpose of determining its excess profits tax credit under the World War II Excess Profits Tax Act, ch. 757, § 201, 54 Stat. 974 (1940), the fair market value of its stock issued in exchange for, and upon conversion of, the bonds issued by it. In the alternative, plaintiff says it is entitled to include in its equity invested capital the fair market value of the bonds converted as of the time of the conversion, and, in the further alternative, of their cost to the transferors, who were the last holders of the bonds.

On the other hand, the government contends that the amount to be included in the plaintiff's equity invested capital is the cash paid to the plaintiff at the time the bonds were originally issued and sold. It argues that the conversion did not add anything to or subtract anything from plaintiff's assets, but it merely substituted a stock liability for a debt. It points out that the taxpayer acquired nothing but the converted bonds when it issued the stock and surrendered nothing but the stock, which was issued at the ratio prescribed in the bonds. The bonds were immediately canceled when plaintiff received them. Defendant says that the value of the bonds and the stock at the time of the conversion is immaterial, because the money paid in for the bonds at the time they were originally issued was the money and property paid in for equity invested capital purposes and nothing more was paid in at the time of the con-

version. Both parties agree that the bonds and the stock were of approximately the same value at the time of the conversion. However, both had increased in value many times since the bonds were first issued.

This is a case of first impression on the problem before us. No case has been cited to us, and we have found none, that involves the precise question to be decided here.

The plaintiff bases its case primarily on Section 718(a) of the 1939 Code of Internal Revenue, which is as follows:

Sec. 718 [as added by Sec. 201, Second Revenue Act of 1940, 54 Stat. 982, and amended by Sec. 218, Revenue Act of 1942, c. 619, 56 Stat. 798]. Equity Invested Capital.

(a) *Definition.*—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)—

(1) *Money paid in.*—Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

(2) *Property paid in.*—Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. If the property was disposed of before such taxable year, such basis shall be determined under the law applicable to the year of disposition, but without regard to the value of the property as of March 1, 1913. If the property was disposed of before March 1, 1913, its basis shall be considered to be its fair market value at the time paid in. If the unadjusted basis of the property is a substituted basis, such basis shall be adjusted, with respect to the period before the property was paid in, by an amount equal to the adjustments

proper under section 115(*l*) for determining earnings and profits;[2]

\* \* \* \* \* \*

The plaintiff also relies on the following portion of Treasury Regulation 112, Section 35.718–1, which relates to the above-quoted Section 718 of the 1939 Code:

If the basis to the taxpayer is cost and stock was issued for the property, the cost is the fair market value of such stock at the time of its issuance.[3]

The 1939 Code provides that all provisions of law applicable in respect of the taxes imposed by Chapter 1 of such Code shall be applicable in respect of the tax imposed by Subchapter E (Express Profits Tax).[4]

Plaintiff contends that for the taxable year 1942 involved here, its basis for loss (unadjusted) is to be determined under Section 113 of the Revenue Code of 1939, which provides:

Sec. 113. Adjusted basis for determining gain or loss.

(a) *Basis (unadjusted) of property.* —The basis of property shall be the cost of such property; \* \* \*[5]

Accordingly, plaintiff first submits that the basis of the property paid in to it is its cost, namely, the fair market value of the stock issued as consideration for the property received at the time of the conversion. It says that Section 718(a) of the 1939 Code quoted above, defines equity invested capital as (1) "Money" paid in, or (2) "Property other than money" paid in. It argues that at the time of the conversion no money was paid in for the stock, but on the other hand, bonds were paid in for it. It contends that "for the purposes of determining equity invested capital, the bonds must be considered property." It reasons that Treasury Regulations 112, Section 35.718–1, supra, provide that the fair market value of the stock at the time of its issuance controls and that such

value represents the cost basis of the taxpayer for the bonds it received in exchange for the stock, which basis should be added to its equity invested capital.

We do not agree with plaintiff's application of the provisions of the Internal Revenue Code and the Treasury Regulations to the facts of this case. The plaintiff has made an ingenious argument based on a literal reading of Section 718 (a), supra, that equity invested capital is either money, or property other than money paid in for stock, and that the bonds were property and not money which were paid in for stock at the time of the conversion. From this, it reasons that according to the Treasury Regulations, its cost basis for the bonds at the time of the conversion was the fair market value of the stock it issued for the bonds. We do not agree that this case can be disposed of by a mere literal reading of the statute and the regulations. It is necessary to go back to the beginning of the transaction and consider all of the facts from that time up to and including the conversion of the bonds for the stock and look at the case from its four corners. The plaintiff would have us consider only what happened at the time of the conversion as if the exchange of the bonds for the stock was a new and independent act with no connection with what had transpired before. This we cannot do, as "the tail must go with the hide." As a matter of fact, the relationship, rights and obligations of the taxpayer and the bond holders were established when the convertible bonds were issued by the taxpayer in consideration of the cash paid to it by the purchasers of the bonds. The bonds provided that a designated amount of the bonds could be exchanged or converted within a stated period of time by the holders thereof for a fixed amount of stock of the taxpayer. By this means, the values of the bonds and the stock were definitely

2. 26 C.F.R., Part 35, Section 718 (1943 Cum.Supp.).

3. 26 U.S.C.1952 ed., Section 718.

4. 26 U.S.C.1952 ed., Sections 728 and 729.

5. 26 U.S.C.1952 ed., Section 113.

fixed with relation to each other, and it made no difference in later years whether either or both increased, decreased, or remained unchanged as to fair market value, because the bondholders could always exchange or convert the same amount of stock, regardless of the market value of either or both. The taxpayer was always obligated to issue stock for the bonds at the ratio provided for in the bonds when requested to do so by the bondholders, and could not take any advantage of a fluctuation in the market value of the stock or of the bonds or of both. So, for all practical purposes, the market value of the stock and of the bonds at the time of the conversion was immaterial. The cost of the stock to the bondholders in relation to the bonds had been fixed from the time the bonds were issued and this cost never changed. When the bondholders bought the bonds, they paid cash for them. It was agreed that if the bonds were ever converted into stock, no additional money or payment was to be required of the bondholders. Therefore, for all practical purposes, the original payment of money for the bonds when they were issued became money paid in for stock when the bonds were converted into stock, and such money became a part of the equity invested capital of the plaintiff. This is true as a matter of fact as well as under the provisions of Section 718(a) of the 1939 Code, supra.

We agree with defendant that the only money or property paid in for taxpayer's stock was the money originally paid by the purchasers of the bonds. Upon conversion, no additional money or property was paid to the taxpayer for its stock. The taxpayer further argues that the bonds were property and cites Victory Glass, Inc. v. C.I.R., 11 T.C. 656 (1948); Difco Laboratories, Inc. v. C.I.R., 10 T.C. 660 (1948); and Walsh Holyoke Steam Boiler Works, Inc. v. C.I.R., 160 F.2d 185 (C.A. 1st, 1947) as authority for this proposition (that bonds and notes are property), and also for the further proposition that their value at the time they were exchanged for stock should be in-cluded in equity invested capital. These cases are of no help to plaintiff because none of them involved convertible bonds. It is true as a general proposition that bonds are property, but here the bonds were debts of the taxpayer. Of course, if a taxpayer exchanges its stock for bonds of another company that are not convertible debts of the taxpayer, the above cases would lend support to the taxpayer's argument that the bonds are property and their value at the time of the exchange determines the amount to be included in taxpayer's equity invested capital. But that is not the situation here. In this case, upon the conversion, the taxpayer merely substituted stock liability for a bonded indebtedness. This added nothing to its equity invested capital. We do not agree with taxpayer's alternative argument that it is entitled to include in its equity invested capital the fair market value of the bonds at the time of the conversion.

The plaintiff argues further that by the conversion of the bonds for the stock, the bondholders contributed additional *going concern value* which plaintiff paid for by the issuance of stock therefor and which became an asset of the corporation, and, therefore, should be included in its equity invested capital, although it is an intangible. We hold that Congress never intended this kind of a result in enacting Section 718(a) of the 1939 Code. If the taxpayer corporation had any going concern value, it possessed it before the conversion of the bonds for stock was effected and the conversion had nothing to do with it. To allow plaintiff to add to its equity invested capital by the payment of its bonded indebtedness on the theory that on such payment the creditor-bondholder contributed going concern value to the taxpayer which became a part of such capital, would be to allow it to include in such capital unrealized appreciation of its assets. This is not permissible. LaBelle Iron Works v. United States, 256 U.S. 377, 41 S.Ct. 528, 65 L.Ed. 998 (1921).

When the conversion took place, the plaintiff received nothing but the bonds,

which it canceled, and gave up nothing but the stock. The conversion added nothing and subtracted nothing from its assets. The effect and result of the entire transaction was that the money originally paid in for the bonds was the money and property paid in for the stock, and this money was all that was added or could be added to taxpayer's equity invested capital. The taxpayer so treated the transaction in its tax returns from 1901 until the filing of its amended petition in this court in 1966, with the approval of the Commissioner of Internal Revenue.

■ Equity invested capital is limited to funds and property actually invested in the taxpayer's business. Unrealized appreciation of its assets (or losses) cannot form a part of such capital. This was the holding of LaBelle Iron Works v. United States, supra. That was a case involving invested capital and excess profits tax during the First World War. There the taxpayer increased the value of some of its assets by $10 million, which it carried to surplus, and it then declared a stock dividend by issuing $19.8 million of stock for $9.9 million of its old stock on a par value basis. The court held that such a transaction was in effect a "paper transaction" which did not increase the invested capital of the company since it did not add any new capital to it. In deciding the LaBelle case, the Supreme Court explained that the purpose of the World War I Excess Profits Tax, Revenue Act of 1917, ch. 63, § 207, 40 Stat. 300, was to raise money quickly for the war effort, and it noted the reasons Congress chose the language that it did.

* * * [i]t was the dominant purpose of Congress to place the peculiar burden of this tax upon the income of * * * businesses exceeding what was deemed a normally reasonable return upon the capital actually embarked. But if such capital were to be computed according to appreciated market values based upon the estimates of interested parties (on whose returns perforce the government must in great

part rely), exaggerations would be at a premium, corrections difficult, and the tax easily evaded. LaBelle, supra, at 387, 41 S.Ct. at 530.

Thus, to avoid a practically impossible administrative burden of determining inflated market values and to prevent avoidance of the tax, "the draftsman of the act resorted to the test of including nothing but money, or money's worth, actually contributed * * *." Id. at 388, 41 S.Ct. at 530.

In light of this World War I Act and the LaBelle decision, Section 718, supra, was adopted. The problems of determining inflated values and the desire to prevent avoidance of the tax were as great when this section was adopted as in 1917, and again Congress chose a restricted definition of "invested capital." If anything, contrary to plaintiff's argument that Section 718 is less restrictive than the World War I Act, the World War II Act definition narrowed the scope of the earlier definition. Section 207 of the Revenue Act of 1917 included in its definition of "invested capital"—

(a) * * * (1) Actual cash paid in, (2) the actual cash value of tangible property paid in other than cash, for stock or shares in such corporation or partnership, at the time of such payment * * * and (3) paid in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year * * *. [Revenue Act of 1917, ch. 63, § 207, 40 Stat. 306.]

while Section 718, supra, did not include in its definition "undivided profits used or employed in the business." See Section 718, Revenue Code of 1939, supra. There is nothing in the language of Section 718 to indicate that Congress attempted to broaden the scope of the earlier act or to overturn or restrict the LaBelle decision. Therefore, we think that any discussion of the World War II Act must take account of LaBelle and conclude that it is applicable to World

War II excess profits tax cases such as the case at bar.[6]

In the case at bar, the conversion of the bonds for the stock was nothing but a paper transaction that was carried out in accordance with the provisions of the convertible bonds. No new or additional capital was acquired by the taxpayer. While the *LaBelle* case did not involve convertible bonds, it illustrates that a taxpayer cannot increase its equity invested capital by the unrealized appreciation of its assets. Such capital can be increased only by the payment or transfer of new money or property to the taxpayer that can be properly considered working capital. This court said in American Radiator & Standard Sanitary Corp. v. United States, 295 F.2d 939, 942–943, 155 Ct.Cl. 515, 521 (1961):

> Certainly, to be considered "property" for tax purposes, the rights received by a taxpayer must be of such vested character as to be properly considered *working capital*. [Emphasis supplied.]

The conversion of the bonds here added nothing to the working capital of the taxpayer.

The Tax Court has applied the principles of the *LaBelle* case in two World War II excess profits tax cases where it excluded from equity invested capital unrealized appreciation of assets where the taxpayers increased the value of the capital stock above the amount of money originally paid in for the stock.[7]

In 1919, the Bureau of Internal Revenue issued a ruling under Section 326 of the Revenue Act of 1918, c. 18, 40 Stat. 1057, which defined invested capital as follows:

> Section 326, Article 831: Meaning of invested capital.
>
> Where bonds are exchanged for stock in the same corporation under the terms of a convertible trust deed, it will be presumed, for the purpose of computing invested capital, that the value of the bonds is equivalent to the value of the stock. The addition to invested capital would accordingly be the amount for which the bonds were originally sold.[8]

This definition of invested capital is in accord with our view of this case and is applicable here even though this ruling was issued before the enactment of the World War II Excess Profits Tax statute. The addition to invested capital of the taxpayer was "the amount for which the bonds were.originally sold."

Revenue Ruling I.T. 2347, VI–1 Cum. Bull. 86 (1927) stated:

> When a corporation retires its bonds and converts them into stock, the issuing price of such stock, so far as the corporation is concerned, will be considered to be the issuing price of the bonds plus the amount of amortized discount previously taken as a deduction by the corporation.

See also G.C.M. 9674, X–2 Cum.Bull. 354 (1931) and T.D. 4603, XIV–2 Cum.Bull. 58 (1935), which are substantially to the same effect.

In the case of Liquid Carbonic Corp. v. Commissioner, 34 B.T.A. 1191, 1196 (1936), the Board of Tax Appeals held:

> \* \* \* the conversion of bonds into capital stock of the obligor is purely a

---

6. See Brown Shoe Co. v. Commissioner of Internal Revenue, 339 U.S. 583, 70 S.Ct. 820, 94 L.Ed. 1081 (1950); Reynolds Spring Co. v. Commissioner of Internal Revenue, 181 F.2d 638, 640 (C.A. 6th, 1950), cert. denied, 340 U.S. 821, 71 S.Ct. 53, 95 L.Ed. 603 (1950); Gabriel Co. v. Commissioner of Internal Revenue, 186 F.2d 786, 794 (C.A. 6th, 1951), cert. denied, 341 U.S. 950, 71 S.Ct. 1018, 95 L. Ed. 1373 (1951); Bard-Parker Co. v. Commissioner of Internal Revenue, 218 F.2d 52, 58 (C.A. 2d, 1954), cert. denied,

349 U.S. 906, 75 S.Ct. 582, 99 L.Ed. 1242 (1955); Western Maryland Railway Co. v. United States, 227 F.2d 576, 578 (C.A. 4th, 1955), affirming 131 F.Supp. 873, 897 (Md.1955), cert. denied, 351 U.S. 907, 76 S.Ct. 696, 100 L.Ed. 1443 (1956).

7. See Home Guaranty Abstract Co. v. Commissioner, 8 T.C. 617, 621 (1947); and L. A. Dreyfus Co. v. Commissioner, decided October 31, 1949, 8 CCH Tax Ct.Mem. 972 (1949).

8. O.D. 306, 1919 Cum.Bull. 283.

capital transaction; that is, a readjustment of the obligor's capital structure, which does not result in either a deductible loss or a taxable gain. The obligor does not pay out anything. It merely readjusts its capital. As we said in *375 Park Avenue Corporation,* supra, [23 B.T.A. 969], "Instead of suffering the outlay of money in excess of the amount borrowed, it created a new distribution of its shares, thus avoiding its fixed financial obligation and devoting the borrowed money to the ordinary risks of its business."

The taxpayer makes the further contention that if it cannot include in its equity invested capital the value of the stock or the value of the bonds at the time of the conversion, it should be allowed to include in such capital the cost basis of the last owners of the bonds who surrendered them for conversion. This argument is made on the theory that the bonds were property paid in for stock and is based on the fact that some of the bonds changed hands many times between the time of their original issuance and the conversion and at much higher prices than were originally paid for them. This contention must fail because we are not concerned with the cost basis of the transferors, but only with the basis of the taxpayer. These bonds were debts of the taxpayer on which it had borrowed the amounts originally paid for the bonds. That was its basis and that is what was included in its equity invested capital. It matters not how many times the bonds changed hands nor how much the price increased for each sale of them prior to conversion, because none of the increased price was paid to taxpayer and consequently could not be included in its equity invested capital. Even if it could be said *arguendo* that the bonds were property paid in for stock at the time of conversion, all that could be included in plaintiff's equity invested capital under Section 718(a) and Section 113 of the 1939 Code was its cost or basis and not the cost or basis of the last transferor. The cost or basis of the plaintiff was the amount originally paid in for the bonds.

It is our view and we hold that all that was ever included in plaintiff's equity invested capital by the issuance of the convertible bonds and their conversion into taxpayer's stock was the money paid in for the bonds when they were originally issued.

Accordingly, plaintiff's motion for partial summary judgment as to Counts XXIX and XXX of its first amended petition is denied, and defendant's motion for partial summary judgment as to such counts of said petition is granted with the petition dismissed as to them. The case is remanded to the trial commissioner for further proceedings.