**ERIE LACKAWANNA RAILROAD COMPANY**
v.
**The UNITED STATES.**
**Nos. 342–66, 362–67.**
United States Court of Claims.
Feb. 20, 1970.

———◆———

Robert T. Molloy, Washington, D. C., attorney of record, for plaintiff; Richard Jackson, Cleveland, Ohio, and Robert E. Simpson, Washington, D. C., of counsel.

E. Alan Moorhouse, Washington, D. C., with whom was Asst. Atty. Gen. Johnnie M. Walters, for defendant; Philip R. Miller and Theodore D. Peyser, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

COLLINS, Judge.

Plaintiff, Erie Lackawanna Railroad Company, a corporation organized and existing under the laws of the State of New York and having its principal office at Cleveland, Ohio, brought this action to recover the sum total of $327,752.60 in income taxes, plus deficiency interest paid thereon and statutory interest as provided by law. Among the items involved in this action [1] is one concerning a deduction for debt discount amortization in the amount of $80,276.55 for the year 1955. Plaintiff claims that, had such deduction been allowed in 1955, this would have increased its net operating loss carryback to 1953 by the amount of the deduction, thus reducing plaintiff's income taxes for that year.[2] Both plaintiff and defendant have filed motions for partial summary judgment solely in regard to the debt discount issue, and the consideration and disposition of these motions is all that is before the court for decision at this time.

On January 26, 1955, plaintiff applied to the Interstate Commerce Commission (ICC) for authority to issue Erie Railroad Company 5-percent debentures, due January 1, 2020, in principal amount not to exceed $40,288,200. The income debentures were to be exchanged on a voluntary basis for up to 402,882 [3] shares of Series "A," 5-percent preferred stock of Erie Railroad Company. The terms of the exchange were to be one income debenture, in principal amount of $100, for one share Series "A" preferred stock,

---

[1]. The other items involved in this action are: (1) failure to allow a deduction for dues and assessments paid by plaintiff to the Association of American Railroads during the years 1950–53; (2) failure to allow a tax credit for income taxes paid by plaintiff to the Republic of Mexico during the years 1950–53; (3) failure to recompute plaintiff's tax liability for the years 1948 and 1950–55 pursuant to Public Law 87–870, and to accord plaintiff appropriate intercorporate dividend deductions. None of these items will be considered by the court at this time, but instead they will be remanded to the trial commissioner for further proceedings.

In addition to the petition containing the above-mentioned items (No. 342–66), plaintiff also filed a second petition (No. 362–67), seeking recovery for the failure of the Commissioner of Internal Revenue to accord plaintiff appropriate intercorporate dividend deductions for the year 1949. The two petitions have been consolidated for trial. The motion for partial summary judgment does not involve case No. 362–67.

[2]. Plaintiff's petition states that it should be allowed to recover the sum of $43,415.84, plus deficiency interest and statutory interest, since this is the amount which was unlawfully assessed and collected in 1953, due to the failure of the Commissioner to allow the deduction for debt discount in 1955.

[3]. This figure represented the total number of shares of Series "A" preferred stock which plaintiff had outstanding on its books as of March 9, 1955.

also having a par value of $100 per share.[4]

In a report and order, dated March 9, 1955, the ICC granted plaintiff's application to issue the income debentures.[5] Pursuant to this order, plaintiff proceeded to exchange the debentures for the preferred stock. By the time the exchange offer had expired, 277,762 income debentures had been traded for a like number of shares of preferred stock. Since the Series "A" preferred stock was shown on plaintiff's books at full par value ($100 per share), plaintiff's preferred stock account was debited $100 for each share of stock taken in, and the income debentures account was credited $100 for each bond that was issued. Accordingly, the preferred stock account was debited (reduced) a total of $27,776,200, and the income debentures account was credited (increased) the same amount.

At the various dates on which the exchanges of debentures for stock took place, the price of the preferred stock, as determined by New York Stock Exchange price quotations and a verification of plaintiff's books and records, was less than the par value of the stock ($100 per share) and consequently less than the maturity value of the debentures ($100 per debenture). The total price or market value of the preferred stock at the time of the exchange of the debentures for stock was $22,558,224.46, which was $5,217,975.54 less than the $27,776,200 maturity value of the debentures. It is this difference ($5,217,975.54) which plaintiff now claims represents the debt discount, and which the Commissioner of Internal Revenue should have allowed to be amortized over the 65-year life of the bonds. The $80,276.55 represents the pro rata share which plaintiff claims should have been amortized during the year 1955.[6]

The question which this court must decide is whether plaintiff sustained amortizable debt discount upon the issuance of its income debentures in return for its preferred stock when the fair market value of the stock at the time of the exchange was less than the maturity value of the debentures. There are several collateral issues which arise in conjunction with this main issue, but they will not be resolved since it is not necessary to do so in order to make a final determination. Instead, we will limit our decision strictly to the unique facts of this case, which we feel require a holding for defendant that there is no debt discount available to plaintiff.

■ There appears to be no real dispute between plaintiff and defendant over the basic operation of the debt discount deduction. Debt discount arises in situations where a taxpayer issues bonds or debt obligations at a price less than the par or maturity value of the bonds. This difference between the cost of the bonds and their face value is normally considered as "interest"[7] or "com-

4. The preferred stock had a par value of $100 with a 5-percent annual dividend, cumulative to the extent of 15 percent. The stock was callable at par plus accrued and unpaid dividends. The interest on the debentures was payable currently only if earned, and cumulative interest was limited to 15 percent.

5. In its report of March 9, 1955, the ICC stated on page 5:
"We find that the proposed issue by the Erie Railroad Company * * * of Erie Railroad Company 5-percent income debentures * * * (a) is for a lawful object within its corporate purposes and compatible with the public interest * * and (b) is reasonably necessary and appropriate for such purpose."

6. All of the above-mentioned facts were stipulated and agreed to by the parties as being true.

7. There was some dispute between the parties over the question of whether bond discount was deductible as "interest" under § 163 of the Internal Revenue Code of 1954 or as a "loss" under § 165 of the 1954 Code. Plaintiff has contended all along that debt discount should be treated as interest. E. g., American Smelting & Ref. Co. v. United States, 130 F.2d 883 (3d Cir. 1942); Natural Gas Pipeline of America v. Commissioner, 45 B.T.A. 939 (1941). Defendant, in its cross-motion for partial summary judgment, seemed to agree with this position taken by plaintiff, but later in its reply brief in support

pensation for the use or forbearance of money," [8] and consequently is deductible under section 163 of the Internal Revenue Code of 1954 as interest. This amount which is deductible is then prorated or amortized over the life of the bonds.[9] *See generally* Helvering v. Union Pac. R.R., 293 U.S. 282, 55 S.Ct. 165, 79 L.Ed. 363 (1934); Natural Gas Pipeline of America v. Commissioner, 45 B.T.A. 939 (1941); Pierce Oil Corp. v. Commissioner, 32 B.T.A. 403 (1935).

The real dispute in this case is whether debt discount arises in situations where a taxpayer issues debt obligations in exchange for its *own stock*. Plaintiff argues that debt discount arises anytime the maturity value of the bonds being issued is greater than the amount received in exchange for the bonds. Plaintiff contends that this rule should apply in all cases no matter whether the payment for the debt securities is in cash or property. In support of its position that debt discount lies in cases where the bonds have been exchanged for property (including stock), plaintiff relies primarily on the cases of Nassau Lens Co. v. Commissioner of Internal Revenue, 308 F.2d 39 (2d Cir. 1962), and American Smelting & Ref. Co. v. United States, 130 F.2d 883 (3d Cir. 1942), for

its authority. The court in American Smelting & Ref. Co. v. United States, *supra* at 885, dealt directly with the issue when it stated: "We believe that the discount is still to be treated as additional interest when the subject matter of the loan is stock instead of cash." This same case was also used by plaintiff as support for its argument that the fair market value [10] of the stock at the time of the exchange should be considered as the cost of the bonds.

The only real difference between the *American Smelting & Ref. Co.* case and the instant case is that the former did not involve an exchange of the corporation's bonds for its *own stock,* but rather involved the stock of a subsidiary company. We feel that this is such a crucial difference between the two cases as to negate any real positive value which the *American Smelting & Ref. Co.* case might have. In addition, it should be pointed out that this court expressly rejected the reasoning of *American Smelting & Ref. Co.* in Montana Power Co. v. United States, 159 F.Supp. 593, 141 Ct.Cl. 620, cert. denied, 358 U.S. 842, 79 S.Ct. 23, 3 L.Ed.2d 76 (1958), and in Southern Natural Gas Co. v. United States, 412 F.2d 1222, 188 Ct.Cl. 302 (1969).

of its cross-motion for partial summary judgment, defendant made the argument that debt discount should be treated as a loss. *E. g.*, Dodge Bros. v. United States, 118 F.2d 95 (4th Cir. 1941); Atlanta & Charlotte Air Line Ry. Co. v. Commissioner, 36 B.T.A. 558 (1937).

The dispute is somewhat irrelevant for purposes of this case since the amount of the deduction would be the same under either section and since a resolution of the issue would have no bearing one way or the other on the ultimate question of whether debt discount actually exists. However, simply for purposes of ease of discussion, we will treat debt discount as if it were deductible under the section on interest.

8. Deputy v. DuPont, 308 U.S. 488, 498, 60 S.Ct. 363, 368, 84 L.Ed. 416 (1940).

9. Treas.Reg. § 1.163–3(a) (1), T.D. 6984, 33 Fed.Reg. 19175 (1968), reads as follows:

"If bonds are issued by a corporation at a discount, the net amount of such discount is deductible and should be prorated or amortized over the life of the bonds. For purposes of this section, the amortizable bond discount equals the excess of the amount payable at maturity * * * over the issue price of the bond * * *."

10. Plaintiff contended that it was proper to determine the fair market value of its stock by reference to New York Stock Exchange price quotations. See American Smelting & Ref. Co. v. United States, *supra*, 130 F.2d at 886, where this method was approved by the court. Defendant did not contest this contention to any extent except to simply deny that such price quotations necessarily establish fair market value.

For purposes of this decision, we will assume, without deciding, that New York Stock Exchange price quotations do establish the fair market value of stock.

Plaintiff was able to cite two cases which did deal directly with the situation whereby the debentures of a company were issued in exchange for the company's own stock. Industrial Dev. Corp. v. United States, 56–2 U.S.T.C. ¶ 10,066 (N.D.Ill.1956); Southern Fertilizer & Chem. Co. v. Edwards, 167 F.Supp. 879 (M.D.Ga.1955). The court in the *Industrial Dev. Corp.* case specifically held that the fact that the debentures were issued in exchange for preferred stock rather than cash would not affect plaintiff's right to the discount, which would be based on the difference between the face value of the debentures and the market value of the preferred stock. The court further ruled that the fact that the debentures were issued in connection with a tax-free recapitalization would not deprive the plaintiff of its right to amortize and deduct the discount over the life of the debentures.

Neither of the opinions contained a detailed discussion of the many and varied problems and viewpoints related to this area, but instead they simply contained findings of fact and conclusions of law. We do not feel that either of the above-mentioned cases was correctly decided, and we, therefore, reject these decisions as authority for the position taken by plaintiff.

The position which this court does take in regard to the issue at hand is that since plaintiff was exchanging $100 debentures for preferred stock for which it had already received $100 in value,[11] then plaintiff lost nothing as a result of the transaction. Since there was no actual difference between the face value of the debentures and the amount received in return for them ($100 preferred stock), there was no discount which could be amortized over the life of the bonds. The fact that the preferred stock had a market value less than $100 at the time of the exchange is of no conse-quence in this type of transaction where the plaintiff is purchasing its own stock. What is important in this case is the value received for the stock at the time of its issuance. Since plaintiff issued its stock for $100 per share and carried the stock on its books at this amount, this is the figure which should be used to determine whether a discount has arisen. *Cf.* Union Pac. R.R. v. United States, 401 F.2d 778, 185 Ct.Cl. 393 (1968), cert. denied, 395 U.S. 944, 89 S.Ct. 2017, 23 L.Ed.2d 462 (1969); Fashion Park, Inc. v. Commissioner, 21 T.C. 600 (1954). Although the facts of *Union Pac. R.R.* are not analogous to the present case, the language and reasoning of the court offer strong support to the position which we now take. This court in *Union Pac. R.R.* held that where the taxpayer's outstanding bonds were converted to common stock, the value of the stock for purposes of determining excess profits tax would be the amount of cash paid for the bonds and not the market value of the common stock at the time of conversion. In reaching this determination, this court stated:

In this case, upon the conversion, the taxpayer merely substituted stock liability for a bonded indebtedness. * *

* * * * * *

When the conversion took place, the plaintiff received nothing but the bonds, which it canceled, and gave up nothing but the stock. The conversion added nothing and subtracted nothing from its assets. The effect and result of the entire transaction was that the money originally paid in for the bonds was the money and property paid in for the stock, and this money was all that was added or could be added to taxpayer's equity invested capital. * * *

Union Pac. R.R. v. United States, *supra,* 401 F.2d at 782–783, 185 Ct.Cl. at 402.

11. The Series "A" preferred stock was issued during a reorganization to former bondholders of plaintiff in full or partial satisfaction of their claims against plaintiff. Thus, plaintiff, in effect, was receiving the cancellation of $100 worth of indebtedness in exchange for the issuance of each share of preferred stock, which was then carried on plaintiff's books at $100 par value.

The exact same reasoning can be applied to the instant case. The amount paid for the preferred stock should be considered as the cost of the bonds. The bonds were exchanged directly for the stock without an additional payment by either side. Consequently, there was no increase or decrease in plaintiff's capital assets as a result of the exchange. The fact that the stock had a market value of less than $100 could not in any way reduce the amount of plaintiff's capital assets—especially since the stock was immediately canceled upon receipt. In effect, we are simply saying that plaintiff has not been hurt, nor has it experienced any loss as a result of the transaction in question. Only where a taxpayer issues a debt obligation for less than its face value should he be allowed a discount deduction. To allow such a deduction in this case would be to give plaintiff a windfall since there is really no difference between the maturity value of the debentures and the amount which plaintiff actually received for them.[12]

Since we are confining our holding strictly to the facts of this case, we do not need to decide the question of whether a bond discount would be allowable in this case if the amount originally paid for the preferred stock had been less than $100. Defendant would probably argue that, even in this situation, the debt discount should not be allowed because the transaction would still be a recapitalization. It would simply be a reshuffling of the corporation's assets whereby debt is exchanged for equity on the books of the corporation and nothing is really gained or lost. In support of this position, defendant could refer to Revenue Ruling 59–387, 1959–2 Cum.Bull. 56, in which the Commissioner of Internal Revenue ruled that an issuance of 30-year debentures by a corporation for its own preferred stock was simply a readjustment of the corporation's own securities in the form of a recapitalization. Consequently, the Commissioner decided that the preferred stock received by the corporation could not be recognized as assets in the hands of the corporation, and, therefore, there could be no bond discount available to the corporation.

Plaintiff, more than likely, would argue that, regardless of how the transaction was labeled, the fact would remain that there would be a difference between the maturity value of the bonds and the amount received in exchange for them (*i. e.*, the cost of the stock). This, in itself, would be enough to create the debt discount.

Since the court is not faced with this problem, it does not now seek to solve it, but it does recognize it as an unresolved issue in this area. We, therefore, leave unanswered the question of whether debt discount would never be available in cases where a corporation issues debt in exchange for its own equity, but we do hold that debt discount is not available in situations where the maturity value of the bonds is the same as the amount received in payment for the stock.

In addition, we have failed to consider the conflict of whether debt discount can arise in instances where bonds are issued for property. Since we feel that, in the bond discount area, a corporation's own stock comprises a category completely separate from cash and other types of property, we have found it unnecessary and indeed unwise to involve ourselves, at this time, in this rather sticky issue. *Compare* Nassau Lens Co. v. Commissioner, *supra*; American Smelting & Ref. Co. v. United States, *supra*; Industrial Dev. Corp. v. United States, *supra*; *with* Southern Natural Gas Co. v. United States, *supra*; Montana Power Co. v.

---

12. The ICC in its report of March 9, 1955, seemed to indicate that the real purpose behind the exchange of bonds for stock was to save income tax in that the interest on the debentures would be deductible whereas the dividends on the preferred stock had not been deductible. No reference was made in the report to a deduction for debt discount. In fact, the failure of plaintiff to claim a deduction for debt discount in its 1955 income tax return lends support to the idea that debt discount was mainly an afterthought and not a reason for the issuance of the bonds.

United States, 159 F.Supp. 593, 141 Ct. Cl. 620, cert. denied, 358 U.S. 842, 79 S.Ct. 23, 3 L.Ed.2d 76 (1958); Montana Power Co. v. United States, 232 F.2d 541 (3d Cir.), cert. denied, 352 U.S. 843, 77 S.Ct. 51, 1 L.Ed.2d 59 (1956) (dictum). Instead, we feel that the problem can be better resolved when a case arises in which bonds are exchanged for property other than the stock of the issuing corporation.

Accordingly, for the reasons discussed above, defendant's cross-motion for partial summary judgment respecting the debt discount issue (in case No. 342–66) is granted, and plaintiff's motion for partial summary judgment is denied. That portion of plaintiff's petition dealing with debt discount is dismissed, and the remaining issues in both cases are remanded to the trial commissioner for further proceedings.