**AMF INCORPORATED**

**v.**

**The UNITED STATES.**

**No. 217-72.**

United States Court of Claims.

April 13, 1973.

Eric R. Fox, Washington, D. C., attorney of record for plaintiff; Ivins, Phillips & Barker, Washington, D. C., of counsel.

Theodore D. Peyser, Washington, D. C., with whom was Asst. Atty. Gen., Scott P. Crampton; Gilbert E. Andrews, Jr., Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges.

ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge:

Plaintiff brings this action to recover the sum of $356,372.25 or such greater amount as is refundable, representing income tax and interest thereon, paid by the plaintiff for the calendar years 1961, 1962 and 1963. The case is before us on defendant's motion for judgment on the pleadings and plaintiff's motion for summary judgment. There is no issue of fact. We hold that defendant must prevail.

On or about March 1, 1961, taxpayer sold, at par, convertible debentures having an aggregate face amount of $39,911,100. Each debenture had a face amount of $100. They were due on March 1, 1981, and bore interest at the rate of 4¼ per cent per annum. They were convertible into the taxpayer's common stock at the rate of five-sixths of one share for each $100 debenture through March 1, 1971, and at a somewhat lesser rate thereafter. The conversion rate was subsequently adjusted for a two-for-one stock split approved on April 18, 1961. The taxpayer alleged in its petition that as of the date of issuance, the value of the conversion right was $3,591,999 and the value of the debt was $36,319,101. In its motion the Government accepted these figures for the purposes of that motion only. The sole issue in this case is the taxpayer's assertion that the value of the conversion rights measures or reflects a debt discount amortizable for the years 1961, 1962 and 1963.

The current Treasury Regulation on Income Tax, § 1.163–3(a)(1) (as did the Regulation in effect at the time of the transactions in question, § 1.61–12(c)(3)) provides that "If bonds are issued by a corporation at a discount, the net amount of such discount is deductible * * * over the life of the bonds." For the purpose of determining the payee's gain, original issue discount was defined at the time of the transaction in IRC of 1954 § 1232(b)(1) of the Code as " * * * the difference between the issue price and the stated redemption price at maturity", and issue price was defined in § 1232(b)(2) as "the initial offering price to the public * * * at which price a substantial amount of such bonds or other evidences of indebtedness were sold." To sustain plaintiff's position would require us to depart from that definition.

■■ It is an established rule of law that discount is a form of interest, i. e., a cost of obtaining capital. Helvering v. Union Pacific R. Co., 293 U.S. 282, 55 S.Ct. 165, 79 L.Ed. 363 (1934); Erie Lackawanna R.R. v. United States, 422 F.2d 425, 190 Ct.Cl. 682 (1970); Chock Full O'Nuts Corp. v. United States, 453 F.2d 300 (2d Cir. 1971). It follows that for there to be a discount there must be an added cost to the issuer, over and above the stated interest, for the use of the payee's capital. The question presented is whether under the circumstances of this case there was such add-

ed cost. We hold that there was not and that therefore taxpayer cannot recover.

In support of its contention, taxpayer argues that the transaction in question constituted an economic loss and as such an increased cost of obtaining capital. We are told that if the taxpayer had sold the conversion feature of the debenture separately it would have surely obtained some consideration for it. Thus during the life of the debenture the holder obtaining something of value without having to pay any separate consideration for it. Therein, lies an alleged economic loss and the added cost for the use of the holder's capital. Taxpayer draws an analogy between the transaction in question and the case of a bond issued with a detachable warrant and points out that in the latter case a discount for the value of the warrant is permitted.

Taxpayer's contention fails and a comparison to the case of the bond issued with a warrant demonstrates why it must. In the case of the debenture issued with a conversion feature the holder may *either* convert his debenture into stock *or* redeem the debenture at the end of the prescribed period, one or the other but not both. The issuer will not in any event incur costs over and above the face value of the debenture plus the stated interest. If the holder elects to convert, the issuer pays nothing. On the other hand, in the case of the bond issued with a warrant, the holder may exercise either or both of his options. He may for example, exercise his warrant or sell it and still redeem his bond at the end of the period. The issuer of the bond issued at par with a warrant is faced with the possibility of incurring an economic detriment over and above the stated interest. The difference involved when a debenture is issued with a conversion feature is how the issuer will pay for the capital received. Certainly there may be economic consequences to the issuer for choosing not to sell the conversion feature separately but any such "loss" will likely be reflected, as it was here, in a lower interest rate

on the debenture. If there was a more profitable mode of accomplishing the taxpayer's motives he would have taken advantage of it. This court will not correct the taxpayer's business judgment.

Of importance also is the matter of consistency of treatment of the parties to the transaction. § 1232(b)(2) defines issue price as the initial offering price to the public, therefore, a holder of a debenture issued at par need not report any income from a "discount" resulting from the inclusion of a conversion feature. It would be inconsistent to permit the issuer of that same debenture to claim that the bond was sold at a discount.

Taxpayer points to the treatment afforded a bond issued at a premium with a conversion feature under Regulation § 1.61–12(c)(2). In that case the amount of the bond price allocable to the conversion feature must be deducted from the premium to determine the amount of the premium the issuer is receiving to offset interest. Taxpayer argues that the treatment of a premium under § 1.61–12(c)(2) is inconsistent with the treatment the Government would apply to the case of a discount. Taxpayer's observation may be well taken but defendant answers that the parties on both sides of the transaction involving the bond premium or discount are treated consistently in both cases. It is more important that the parties to the transaction involving a bond issued with a conversion feature, issuer and holder, be treated consistently with one another. Since § 1232(b)(2) precludes the possibility of the holder recognizing a discount in the case of bond issued at par, consistency of treatment for all parties to the transaction directs that the issuer also be precluded from recognizing a discount for the same bond. The asserted inconsistencies between the sections dealing with different types of transactions are matters for Congress to consider.

The parties have discussed two recent cases: Chock Full O'Nuts, *supra,* and Hunt Foods & Industries, Inc. v.

Commissioner, 57 T.C. 633 (1972), pending on appeal (9th Cir.). Both of these cases dealt with the question presented in this case and both lend support to our conclusion. It would be superfluous to quote all the reasons they adduce. Any not mentioned here may be deemed incorporated by reference. *Chock Full O'Nuts* is very nearly on all fours with the case at bar. In that case the corporation issued convertible debentures at a conversion rate somewhat different than those issued by our taxpayer. Aside from that difference, the facts of the cases and the arguments made by the parties are very much the same. Judge Mansfield writing for the court noted as we do that the language of § 1232(b)(1) does not support the contention that there can be a discount where a bond is offered at par, and went on to say at p. 304 of 453 F.2d:

> Furthermore, if we look to the substance of the transaction * * * the taxpayer has failed to satisfy its burden of showing that the amount of the issue price allocable to the conversion feature represents a cost of borrowing money that must without qualification be paid. * * *

The parties in the case at bar discuss the retroactivity of Treasury Regulations §§ 1.163–3 and 1.1232–3 issued in 1968. Defendant points out that these Regulations were issued to cover the years in question and clearly bar taxpayer's recovery in this case. We agree with the Second Circuit opinion in *Chock Full O'Nuts*, that the matter of retroactivity of the 1968 Regulations is not of import in view of the language of the Statute and Regulation in effect at the time of the transactions in question. We do not depend on the 1968 Regulations to hold that taxpayer cannot recover in this case.

The Tenth Circuit has recently issued an opinion in the case of National Alfalfa Dehydrating & Milling Co. v. Commissioner, 472 F.2d 796 (1973). The issue in that case was the question of discount where $50 face value debentures were issued in exchange for $50 par value stock having a fair market value of under $50. That court held, with one dissent, that there could be a discount. Although the majority takes issue with certain decisions of ours, we have not cited those cases here only because we do not regard them as relevant under the facts of this case. Since the decision of the Tenth Circuit has no bearing on the question at bar, we do not consider that it is in conflict with the decision in this case.

For the reasons above, we hold that plaintiff cannot recover. Defendant's motion is granted, plaintiff's is denied. Plaintiff's petition is dismissed.