Madden, Judge,
delivered the opinion of the court:
The plaintiff, The Montana Power Company, sues for a refund of taxes. It says that when it paid off, in 1945, debentures which it had issued in 1936, it suffered a loss which it should have been, but was not, allowed to deduct from its taxable income in 1945.
In 1936, practically all of the plaintiff’s stock was owned by American Power and Light Company, a public utility holding company, hereinafter called “American.” At that time American also owned all the stock of Montana Power Gas Company, hereinafter called “Gas Company.” In 1936, pursuant to a plan- of reorganization of the corporate structures of these companies, the plaintiff acquired all the assets of Gas Company in return for 30-year 5% debentures of the *622 plaintiff of the face value of $10,589,900. The cost of the assets to Gas Company had been $11,183,595.53, but their basis in Gas Company’s hands had been reduced to $7,044,544.44 on account of depreciation and other allowable causes. The exchange of the assets by Gas Company to the plaintiff was tax free, because it was a step in the reorganization, although it seems to have involved a profit to Gas Company of $3,545,355.56. On the other hand, under the tax statutes, the assets had the same basis in the hands of the plaintiff which they had had in the hands of Gas Company, i. e. $7,044,544.44, so that the Government might later get a tax on the capital gain, if the plaintiff should later sell the Gas Company assets.
In 1937, American liquidated Gas Company, whose only asset was the $10,589,900 of the plaintiff’s debentures. Pursuant to section 112 (b) (6) of the Revenue Act of 1936, this transaction was tax free, and the basis of the debentures in the hands of American was the same as it had been.in the hands of Gas Company, i. e. $7,044,544.44, the basis of the assets which Gas Company had exchanged for the plaintiff’s debentui’es. American, in 1945, sold the debentures to banks for $10,645,724.02. In its tax return for 1945, American reported that sale, said that the debentures had a cost or other basis of zero but that the amount received was an “amount excluded from gross income under Section 371 (b) of the Internal Revenue Code.”
The plaintiff, on November 26, 1945, retired the $10,-589,900 face amount of these debentures by paying that amount of cash to the banks, which were then the holders of the debentures.
The plaintiff, having issued the debentures here involved in 1936, and having received in return assets having a basis much less than the face amount of the debentures, conceived that it was in the tax position of a corporation which had issued bonds at a discount. Pursuant to Treasury Regulations,[1] and apparently without any express statutory sanction, such a corporation is allowed to treat the amount of the discount as if it were interest, divide it by the number of years of life of the bonds, and deduct, in each year, the proper fractional part of it as interest paid in that year. *623 The plaintiff, asserting- that it had issued its 30-year debentures at a discount of $3,545,355.56, claimed discount expense of the proper fractional amounts of that sum for the years 1940 and 1941 and sued in the United States District Court for the District of New Jersey for a refund of taxes on that account. The District Court held that, since the plaintiff had not shown that Gas Company’s assets were worth less than the $10,589,900 which the plaintiff paid for them in 1936 by issuing its debentures, there was no basis for a decision that the debentures had been issued at a discount. The Montana Power Company v. United States, 121 F. Supp. 577; affirmed 232 F. 2d 541; cert. den. 352 U. S. 843.
The Government urges, not very vigorously, that these decisions create a collateral estoppel against the plaintiff which requires the dismissal of its present suit. The plaintiff, both in that suit and the instant one, takes the position that the actual value of the Gas Company assets in 1936 is irrelevant, and in neither suit did it present any evidence of that value. There was, therefore, no decision in the other suit as to the fact of value. As to the legal question, the District Court did decide that the legally imposed tax basis •of the assets which the plaintiff received for its debentures was not the measure by which it would be determined whether the debentures were issued at a discount.
In the instant case we may have a comparable problem, that is, whether for another tax purpose relating to these debentures, the artificial, legally imposed tax basis of the assets, rather than their actual value, should be controlling. Our impression is that the doctrine of collateral estoppel is not applicable, but, as will appear hereinafter, we decide the case on other grounds.
The ground of the plaintiff’s instant suit is that it paid out, in 1945, $10,589,900 to redeem debentures for which it.had received, in 1936, property worth only $7,044,544.44 for income tax purposes, no matter how much the property may have been worth for operating, sale, or other purposes.
We lay aside, for the moment, the discrepancy between the tax basis figure and the actual value figure. If one buys something and pays more than it is worth, and more than he can resell it for, there are no immediate tax consequences of *624 this every day occurrence.. If, instead of paying cash, he promises to pay after a period of years, he may regret his bad bargain more, but when he pays, there are still no tax consequences. He must “realize” his bad bargain, his loss, by selling. Likewise when he makes a good bargain and gets something worth more than he pays or promises to pay for it, he is not taxed upon his good fortune until he realizes his gain by selling.
If the tax gatherers did base taxes and deductions upon financial statements showing taxpayer’s net worth on specified tax days, it would seem that the plaintiff’s net worth, assuming still that it obligated itself in 1936 to pay $10,589,900 for property worth only $7,044,544.44, was impaired in 1936, and not in 1945. Its 1936 financial statement would show the large liability and the small sum in the assets column. We have difficulty, then, in relating the plaintiff’s alleged diminished net worth to the year 1945, even if we assume that diminished net worth is relevant for income tax purposes.
The plaintiff’s contention that net worth is relevant for income tax purposes is based upon the Supreme Court’s decision in United States v. Kirby Lumber Co., 284 U. S. 1. In that case the taxpayer corporation purchased some of its outstanding bonds for less than their face value and for less than the amount which it had received for them when they were issued. The Court held that the difference was taxable income. The corporation had, obviously, made a profit. It had, we will say, received $100 for the bonds and bought them back for $90. From the tax gatherer’s standpoint, it was now or never, so far as collecting a tax on that profit was concerned. The profit was “realized” as far as it ever could be realized, since there was nothing left to sell. The reacquired bonds would go to the incinerator; the $10 was in the asset column of the corporation’s account. The Supreme Court said, in Kirby Lumber, at page 3:
As a result of its dealings it made available $137,521.30 assets previously offset by the obligation of bonds now extinct.
If a corporation issues its bonds for $90 and buys them back for $100, it has suffered a loss, and in this case the *625 taxpayer’s only chance to get a tax benefit from that loss is then and there, because he has nothing to sell in the future to “realize” the loss. The tax benefit has been allowed in such cases. American Gas and Electric Co. v. United States, 84 C. Cls. 92, 108, 109.
We think that the doctrine of Kirby Lumber and its counterpart arises out of the necessity of the type of transaction there involved, i. e. transactions where there has been, in fact, a gain or a loss, but there will be no later opportunity to apply the usual rules of “realization.” We think that, except in such cases, net worth is irrelevant for income tax purposes, and both the tax gatherer and the taxpayer must wait until gains or losses are realized in the normal way. If this is true, the plaintiff, even though it had in fact, and not only on an artificial tax basis assumption, got less than its money’s worth when it promised to pay, and when it ultimately paid, for Gas Company’s assets, would not have a tax deductible loss, since it still had, in 1945, the assets which it bought from Gas Company in 1936.
We have considered the contrary position on this question taken by the Court of Appeals for the Third Circuit in American Smelting & Refining Co. v. United States, 130 F. 2d 883, but we find ourselves unable to agree with it.
If the plaintiff had resold the assets received from Gas Company in 1936, it would have been saddled with the low cost basis which it had inherited from Gas Company in 1936. This would have increased its gain or diminished its possible tax deductible loss on the resale. We think' we may assume that there is some fair and rational basis for making these reorganization transactions tax free, and that the burden of taking the transferor’s basis is adequately compensated by corresponding advantages.
The plaintiff’s petition will be dismissed.
It is so ordered.
LaRamoke, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
Whitaker, Judge, took no part in the consideration and decision of this case. •
*626 FINDINGS OF FACT
The court, having considered the evidence, the stipulation of the parties, and the briefs and arguments of counsel, makes findings of fact as follows:
1. This case arises under the Internal Revenue Code of 1839 and Treasury Regulations promulgated thereunder.
2. The jurisdiction of this Court is based upon Title 28, United States Code, Section 1491, in that the claims presented against the United States are founded upon an Act of Congress.
3. At all times hereinafter .mentioned, the plaintiff was, and now is, a corporation duly organized and existing under and by virtue of the laws of the State of New Jersey, and having its principal office and place of business in Butte, Montana.
4. The original petition in this case was duly filed with this Court on October 1, 1953. Said petition contained five counts, each count covering a separate year as follows:
First Count_1941
Second Count_:_1942
Third Count_1943
Fourth Count_1944
Fifth Count_1946
Each count was an action for the recovery of interest allegedly erroneously and illegally assessed and collected by defendant as part of the plaintiff’s income and/or excess profits taxes for the years indicated above.
5. On November 18,1953, the plaintiff duly filed with this Court its first amendment to the petition referred to in finding 4 above. This has been the only amendment to the original petition. In said amendment, the second, third and fourth counts of the original petition were amended to include a claim for recovery of excess profits taxes in addition to interest as originally claimed, while the fifth count of the original petition was amended to include a claim for recovery of income taxes in addition to interest as originally claimed.
6. The plaintiff waives any and all claims for refund of income and excess profits taxes and interest thereon for the years 1941 and 1942 set forth in the first and second *627 counts of the petition as amended. For the years 1943, 1944 and 1945 set forth in the third, fourth and fifth counts, respectively, of the original petition as amended, the plaintiff does not waive its claims in respect of the deduction claimed by the plaintiff as arising from the retirement of its 5% debentures in 1945 (referred to hereinafter) and the consequent-unused excess profits credit carry-back to 1943 and 1944 and the resulting interest due on any recomputation of taxes arising from such adjustments for said three years. Any other interest refund claimed with respect to the years 1943, 1944 and 1945 is waived.
7. American Power & Light Company, hereinafter referred to as “American”, was a public utility holding company duly organized and existing under the laws of the State of Maine. During 1931 American acquired natural gas properties in the Cut Bank area in Glacier and Toole Counties in northern Montana. American entered into a program of development of the properties, including the construction of a gas transmission pipe line from the Cut Bank field southward to Helena, Deer Lodge, Anaconda and Butte, all in the State of Montana. On December 31,1932 these properties were transferred to Montana Power Gas Company, hereinafter' referred to as “Gas Company”, an operating company newly Organized under the laws of New Jersey to acquire such properties and which issued all of its outstanding capital stock to American and thereby became a wholly-owned subsidiary of American. Montana Power Gas Company continued operation of the properties until November 30, 1936, at which time they were transferred to The Montana Power Company, the plaintiff herein.
8. On November 30, 1936, American owned 99.75% of the ■common stock and 93.73% of all the outstanding voting stock of The Montana Power Company, the plaintiff in this .action. On the same date American owned 100% of all of the outstanding stock of Gas Company.
9. On November 30, 1936, the plaintiff acting under a plan of reorganization issued $10,589,900 principal amount of its 5% debentures maturing December 1, 1966 to the Gas Company in exchange for all ,of the assets of Gas Company. The adjusted basis of such property for Federal tax pur *628 poses was $7,044,544.44. The excess of the par value of the bonds over the tax basis of the properties received therefor is $3,545,855.56.
10. The plan of reorganization mentioned in finding 9 above was submitted to and approved by the Federal Power Commission subject to a condition embodied in a written agreement between the transferor and the transferee providing:
It is understood that if the cost to American Power and Light Company as provided in said order of the Federal Power Commission is not established you will return to us such amount of Debentures as shall be in excess of said cost so established.
■ 11. The issuance by the plaintiff on November 30, 1936 of $10,589,900 principal amount of its 5% debentures in exchange for the assets of Gas Company constituted a tax-free reorganization as a consequence of which the adjusted basis of said assets in the hands of the plaintiff immediately after said exchange was the same adjusted basis which said assets had in the hands of Gas Company immediately prior to said exchange, to wit, $7,044,544.44 and said adjusted basis has been utilized by the plaintiff at all times subsequent to said exchange for all purposes of the provisions of the ■Revenue Acts and Internal Revenue Code as to which said adjusted basis was relevant.
12. On June 30, 1937, Gas Company was liquidated by .its parent, American, in a transaction under which no gain or loss was recognized either to American or Gas Company pursuant to Section 112 (b) (6) of the Revenue Act of 1936. As a result of said liquidation American acquired the $10,-589,900 principal amount of the aforesaid 5% debentures from Gas Company. As a consequence of said liquidation the basis of said debentures in the hands of American immediately after such liquidation was the same basis which said debentures had in the hands of Gas Company immediately prior to said liquidation, to wit, $7,044,544.44.
13. On October 5, 1945, American sold the entire issue of ■said 5% debentures to two banks for a total cash consideration of $10,645,724.02 as follows:

*629
Principal

The Chase National Bank of the Amount Price
City of New York_$5, 689,900.00 $5, 619,366. 82
Bank of America National Trust and Savings Association_ 6, 000,000.'00 5,026, 357.20
Total. 10,589,900.00 10,645,724.02
In the Federal corporation income tax return filed by American in respect of the calendar year 1945, there was included with said return “Schedule C — Consolidated Long-Term Capital Gains and Losses”. Said schedule reports that The Montana Power Company 5% Thirty-Year Debentures Due 9-1-66 were sold and that said debentures upon such sale had a cost or other basis of zero. The gain upon such sale was not recognized and the notation in respect of such gain which appears on Schedule C is: “Amount excluded from gross income under Section 371 (b) of Internal Eevenue Code. Form 982A filed herewith.” The Eevenue Agent’s report covering American’s return for the year 1945 accepted said nonrecognition of gain and in respect of such transaction said report referred to the application of Supplement E.
14. If C. W. Scholz who was Assistant Treasurer of American Power & Light Company for the years 1935 to 1953 and is now the liquidating trustee of that Company, were called to testify he would state that:
American was required under the provisions of the Public Utility Holding Company Act (15 U. S. C. Sec. 79) to dispose of certain of its investments over a period of time and finally to completely liquidate. From time to time subsequent to June 30,1937, the date of acquisition by American of the 5% Debentures of Gas Company,, and October 5,1945 the date of sale by American of said Debentures, American made sales of certain investment securities owned by it pursuant to orders of the Securities and Exchange Commission which met the requirements of Section 373 (a) of the Internal Eevenue Code of 1939. The provisions of Section 371 (b) of the Internal Eevenue Code of 1939 applied to the sales of said investment securities and the gains realized by American in respect of said sales were not recognized and were duly applied in reduction of basis of remaining property in the -hands of American in accordance with the require *630 ments of Section 372 (a) (2) of the Internal Revenue Code of 1939. Included with said remaining' property in the hands of American were the aforesaid Montana Power Company 5% Debentures in the principal amount of $10,589,900 and as a consequence of said sales the basis of such Debentures was reduced as follows:

Year Amount

$6,331,410. 63 CD tf*.
704, 593.43 CO Ol
Total __L_ 7,036, 004. 06
As a result of said reduction of basis said Debentures were considered to have a zero basis in the hands of American on October 5,1945. During the course of the proceedings before the United States District Court for the District of New Jersey in The Montana Power Company v. United States of America, it was found that the basis of said Debentures should be stated as $7,044,544.44 instead of $7,036,004.06.
The amount of gain not recognized to American upon disposition of 5% Debentures of Gas Company was duly applied by American pursuant to the provisions of Section 371 (b) in the reduction of basis of other assets held by American at that time and said assets ultimately were distributed by American to its stockholders in liquidation distributions in 1950, 1952 and 1953, such application of non-recognized gain and liquidating distributions being made pursuant to orders of the Securities and Exchange Commission rendering applicable the provisions of Supplement R of the Internal Revenue Code of 1939.
15. On November 26, 1945, the plaintiff retired the aforesaid $10,589,900 principal amount of 5% debentures by paying cash in the amount of $10,589,900 to the above-mentioned banks, the then holders of said debentures.
16. The plaintiff keeps its books and files its Federal income and excess profits tax returns on the accrual basis.
17. On February 15, 1952, the plaintiff commenced an action in the United States District Court for the District of New Jersey against the defendant herein. Said action, entitled The Montana Power Company v. United States of America, was concerned with the recovery of the plaintiff’s income taxes for 1940 and income and excess profits taxes for 1941. No other years were involved in said action. The plaintiff alleged in said action that the aforesaid $10,589,900 *631 principal amount of 5% debentures issued by the plaintiff on November 30, 1936 were issued at a discount of $3,545,-355.56, said amount representing the excess in principal amount of the plaintiff’s 5% debentures over the adjusted basis of the assets received by the plaintiff from Gas Company in exchange therefor. • The plaintiff claimed in said action that, for the years 1940 and 1941, pursuant to Sections 23 and 711 of the Internal Revenue Code of 1939 and Section 19.22 (a)-18 of Treasury Regulations 103 for Federal income and excess profits tax purposes, it was entitled to amortize the aforesaid debenture discount of $3,545,355.56 ratably over the 30-year life of the debentures and was entitled to ah annual deduction from gross income of one-thirtieth of the aggregate discount of $3,545,355.56, or $118,178.52, for each of the years involved therein, to wit: 1940 and 1941.
18. In a decision dated June 30, 1954, the District Court held that the plaintiff was not entitled to deduct the alleged discount in the years 1940 and 1941 as claimed. The decision is reported in The Montana Power Company v. United States of America, 121 F. Supp. 577. Said decision was affirmed by the United States Court of Appeals for Third Circuit on March 28, 1956, 232 F. 2d 541. The Supreme Court of the United States denied certiorari on October 8, 1956. The facts set forth in findings 7, 8, 9, 10, 11, 15, and 16 are identical with the facts involved in the suit referred to in this finding.
19. On or about March 11,1946, the plaintiff filed tentative United States income and excess profits tax returns for the calendar year 1945 with the Collector of Internal Revenue for the District of Montana- Income tax in the amount of $325,000 and excess profits tax in the amount of $100,000 were paid with the tentative returns. Final returns for the year 1945 were filed, under an extension granted by said Collector, on June 15,1946, indicating an income tax liability of $242,805.09 and no excess profits tax liability.
20. On or about June 18,1948, taxpayer made a voluntary payment by check to the Collector of Internal Revenue, District of Montana, of additional income tax for the year 1945 in the amount of $820,000.
*632 21. In a Revenue Agent’s Report dated March 21, 1949, the plaintiff’s income tax-'liability for 1945 was determined to be $1,246,098.48 and a deficiency of 1945 income tax was proposed in the amount of $1,003,411.77, later reduced by agreement to $1,003,293.37. Said report also determined that the plaintiff had no excess profits tax liability for 1945.
22. Form 874, “Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Over-assessment”, with respect to the proposed deficiency of income tax for the year 1945 in the amount of $1,003,411.37 was filed by the plaintiff with the Treasury Department on or about April 11, 1949. Thereafter, on or about June 13, 1949, a revised Form 874 was filed in respect of a corrected amount of income tax deficiency in the sum of $1,003,293.37.
23. Under date of August 29, 1949, the plaintiff received a “Statement of Income Tax Due” indicating an assessment of interest in the amount of $2,777.86 on an alleged excess profits tax deficiency for 1945. Said assessment was satisfied by a credit of $2,777.86 derived from an overassessment of 1944 excess profits tax per Certificate of Overassessment, Schedule No. 151002. Also on August 29,1949, the plaintiff received a “Statement of Income Tax Due” indicating the assessment of 1945 income tax in the amount of $1,003,293.37 plus interest thereon of $111,436.97 or an aggregate tax and interest of $1,114,730.34. Said “Statement” indicated that $817,681.72 of the voluntary payment of June 18, 1948 (referred to in finding 20 herein)! was credited against said aggregate tax and interest. The balance of said income tax liability and interest, or $297,048.62, was satisfied as follows: credit of amount paid with tentative returns in excess of amount shown to be due on final returns, $182,194.91 credit of a portion of overassessment of 1944 excess profits tax per Certificate of Overassessment, Schedule No. 151022 cash payment made September 8, 1949 and/or January 6, 1950, $41,953.49.
24. On or about June 8,1949, the plaintiff filed an application for relief under Section 722 of the Internal Revenue Code of 1939. The agreed constructive average base period net income in amount of $3,904,877.99, was approved by the Excess Profits Tax Council in- August of 1949. Said base *633 period net income was utilized by the Commissioner in his determination that the plaintiff had no excess profits tax liability for 1945.
25. A Revenue Agent’s Report dated March 21, 1949 and amended on review determined the plaintiff’s 1943 excess profits tax liability in the amount of $1,629,005.57. Said liability plus interest of $191,115.03 was paid as follows: $669,064.15 in quarterly installments during 1944 as per the plaintiff’s final 1943 excess profits tax return filed pursuant to an extension of time on June 14,1944; voluntary payment on December 30,1944 of $352,858.00 plus interest of $16,806.67 computed from March 15, 1944 through December 30,1944; by the Commissioner of Internal Revenue crediting against said excess profits tax liability an overassessment of the plaintiff’s income taxes paid for the year 1943 in the amount of $464,627.33; by a credit of a portion of an overassessment of 1944 excess profits taxes for the year 1944 in the amount of $56,998.77 against said excess profits tax liability for 1943; by a cash payment of $286,292.35 made on or about September 8, 1949. In the determination by the Commissioner of Internal Revenue of the plaintiff’s excess profits tax liability of $1,629,005.57 for the calendar year 1943, effect was given to an unused excess profits credit adjustment of $435,884.88. In computing said unused excess profits credit adjustment, no effect was given to the deduction of $3,545,355.56 which the plaintiff claims for the calendar year 1945 as a consequence of the retirement in that year of its 5% debentures in the principal amount of $10,589,900. • Said deduction is the difference between the principal amount of said debentures of $10,589,900 and the basis of the assets received upon issuance of said debentures on November. 30,1936 of $7,044,544.44.
26. A Revenue Agent’s Report dated March 21,1949 determined the plaintiff’s 1944 excess profits tax liability in the amount of $2,583,502.85. The plaintiff’s final excess profits tax return for 1944, filed pursuant to an extension of time on May 11, 1945 indicated an excess profits tax liability for the year of $2,799,146.48. This latter amount was paid in quarterly installments during 1945, with the result that the plaintiff overpaid its excess profits tax liability for the year in an amount of $195,642.63, which amount was credited as *634 follows: $56,998.77 against the plaintiff’s excess profits tax deficiency for 1943; $62,966.78 against the plaintiff’s income tax deficiency for 1944; $72,900.22 against the plaintiff’s income deficiency for 1945; and $2,777.86 against interest on the plaintiff’s potential excess profits tax deficiency for 1945. In the determination by the Commissioner of Internal Kevenue of the plaintiff’s excess profits tax liability of $2,583,502.85 for the calendar year 1944, no unused excess profits credit adjustment was allowed.
27. On or about June 29,1950, within the period of limitations prescribed by Section 322 (b) of the Internal Kevenue Code of 1939, the plaintiff duly filed with the Collector of Internal Kevenue for the District of Montana, claims for refund of 1943 and 1944 excess profits taxes in the amounts of $1,629,005.57 and $692,743.56, respectively, and a claim for refund of 1945 income taxes in the amount of $1,003,277.81 On November 27, 1951, the Commissioner of Internal Kevenue notified the plaintiff by registered mail of the rejection and disallowance of the aforesaid claims for refund.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and the petition is therefore dismissed.

 Section 19.22 (a)-18 of Treasury Regulations 103.